[Civ. No. 9187.   Third Dist.   Mar. 12, 1958.]

Estate of CLYDE ELDON WEAVER, Deceased. DOROTHY M. TALBOT, as Administratrix, etc., Respondent, v. LOUIS E. WETZEL, Appellant.

MacBride & Gray and Hugh A. Evans for Appellant.

Irving D. Gibson for Respondent.

PEEK, J.—This is an appeal from an order confirming sale of real property by the administratrix of the above-entitled estate.

The appellant, who is the assignee and transferee of the heirs of the deceased, objected to the sale on the ground that it was unnecessary since he was ready, willing and able to pay the expenses of administration. However the court confirmed the sale, and this appeal followed.

The overly long and contentious history of this case begins with the death in 1938 of James Wesley Weaver, leaving as his sole heir his son, Clyde Eldon Weaver. The latter died the following year, and prior to probate of his father's estate. The sole asset in each estate consists of a small acreage in Sacramento County. At the time of Clyde Eldon's death he was a resident of Winslow, Arizona. His heirs are his wife, Mildred, and three children—Virginia, Norma and James Eldon, all adults. In June of 1948 James Eldon, on behalf of himself and the remaining heirs of James Wesley and Clyde Eldon, for valuable consideration, executed and delivered to Louis E. Wetzel, also a resident of Winslow and the appellant herein, a quitclaim deed to the real property in question. Thereafter, on September 3, 1949, all of the heirs joined in the execution of a warranty deed covering the same property and delivered it to appellant who recorded the same on May 7, 1951. On January 7, 1949, Dorothy M. Talbot, a stranger, neither an heir nor a creditor of the decedent, filed a petition for letters of administration in the estate of Clyde Eldon, being case Number 30600 in the Sacramento County Superior Court. Although her petition was filed in January of 1949, letters were not issued until June 17, 1954. It would appear that a like petition was contemporaneously filed in the estate of James Wesley since it bears Number 30599. On February 25, 1954, and prior to the issuance of letters of administration, a request for special notice was filed by appellant through his attorneys. On April 12, 1956, the administratrix petitioned for confirmation of sale of real property giving notice to appellant as requested. Thereafter on April 24 appellant filed his opposition thereto. It appears that in the probate of the estate of James Wesley an identical situation developed. In that proceeding the late Grover W. Bedeau, then Judge of

the Superior Court of Sacramento County, upon the hearing of the petition denied confirmation thereof, and in his order noted that Wetzel, through his attorneys, had agreed in open court to pay all ". . . proper expenses of administration of said estate [number 30599] and the Estate of CLYDE ELDON WEAVER, Action No. 30600 [the present proceeding], as determined by the Court not heretofore paid, and after examining the return and hearing the evidence the Court finds that said sale is not necessary to pay the expenses of said administration." Disregarding the conclusion of the court in the James Wesley estate, the administratrix and her attorney again sought to sell the property for the same reason that it ". . . is and was necessary in order to secure funds with which to pay the expenses of administration. . . ." Opposition to confirmation of the proposed sale was again filed by appellant and upon the same grounds as in the previous proceeding. Thereafter a hearing was held on May 8, 1956, at which appellant's attorneys offered in evidence the entire file of the James Wesley estate and affidavits by each of the heirs of the deceased identical to those offered in that proceeding which in substance alleged that the affiants as the surviving spouse and children respectively of the deceased were his sole heirs and as such had executed a warranty deed to the real property in favor of appellant; that said deeds which were also introduced in evidence were then a matter of record; and that the affiants waived any right, title or interest in and to said real property. During the course of the hearing the court reviewed the history of the litigation and stated that at one time, when inquiry was made of the administratrix and her counsel as to why they were so persistent in their attempts to sell the property, Attorney Gibson answered that, "Well, among other things he wanted a bigger fee."

At the conclusion of that hearing the court stated that the sale would not be confirmed and directed counsel for appellant and for the administratrix to join with the court and determine the cost of administration, and that appellant through his attorney would then deposit with the administratrix the amount as found by all of the parties. For the purpose of computing the cost, the hearing was continued to May 15, 1956. At the continued hearing counsel for appellant appeared, but there was no appearance for the administratrix, and the matter was again continued to June 8, 1956. Again there was no appearance by counsel for the administratrix and

the court continued the matter for a third time to June 29, 1956. At the fourth and final hearing counsel for the administratrix did appear. A cashier's check in the sum of $250 was tendered to him on account of the costs of administration, but he refused to accept the same.

At the hearing the court expressed a desire to personally view the premises in order to determine the true value of the property and stated that its previous "order" would be reversed and that the sale would be confirmed following inspection of the property.

Thereafter findings were made and entered by the court, the pertinent portions of which are as follows: that "a sale of said real property is and was necessary in order to secure funds with which to pay the expenses of administration of the estate of said decedent"; and that ". . . there is no personal property and no funds from which to pay or defray the expenses of administration of said estate, and therefore good reason existed for said sale when it was made by said administratrix and now exists." Lastly the court, in finding IX, stated:

"All of the foregoing recitals are true, but subject to this explanation: (a) The property consists of some acreage some miles from the City of Sacramento, the title to which stood in the father of the decedent herein. After the father's death the title passed to the above-named decedent, his son. It became necessary to administer first the father's estate and then the son's. The administratrix is a stranger, being neither a creditor nor an heir of decedent. (b) There was a persistent effort on the part of the administratrix and her attorney in the father's estate to sell the property, although certain interested parties have been trying to save the property for the assignee of the family of decedent. Said administratrix and her attorney finally did accept an amount of money agreed upon as necessary to pay the expenses of administration of the father's estate. The same procedure has been taking place in the son's estate; however, the administratrix and her attorney finally succeedded in advertising the property for sale and bringing the present return of sale before this Court for confirmation before any money with which to pay the expenses of administration was actually paid over to the administratrix or her attorney, and, while there was at all times a genunie offer by a party interested in the property, to pay all legitimate expenses of administration the administratrix and her attorney cannot be held to have agreed thereto. (c) As a last

resort, and to enable the Court to determine whether the amount bid herein represented the value of the property, the Court suggested that another appraiser be appointed to permit the Court to determine if the amount so bid was disproportionate to the value thereof as now appraised. None such appeared.

"For the foregoing reasons, the Court has been forced to confirm the sale.

" (d) The Court has not passed upon the necessary expenses of sale as claimed by the administratrix, except the usual ones of advertising, Clerk's costs, etc. Other items will be disposed of later when brought before the Court."

Appellant's contention on appeal is essentially that the record is insufficient to support the conclusion of the trial court that the sale by the administratrix was necessary. Probate Code, section 754, provides in part that,

". . . When a sale of property of the estate is necessary for any such purpose [to pay debts, legacies, family allowance or expenses], or when it is for the advantage, benefit, and best interests of the estate and those interested therein that any property of the estate be sold, the executor or administrator may sell the same, either at public auction or private sale, . . ."

It is further provided in Probate Code, section 785, that:

"Upon the hearing the court must examine into the necessity for the sale, or the advantage, benefit and interest of the estate in having the sale made, and must examine the return and witnesses in relation to the sale; . . ."

It follows from the applicable code sections that in order to sell real property of an estate it first must be shown that such sale is necessary to satisfy obligations of the estate or is for the best interests of the estate and those interested therein, and second that upon a hearing for such purpose the court must examine into the necessity therefor or the advantage thereof.

Under the circumstances disclosed by the record, the only alleged purpose to be achieved by selling the property was to pay the costs of administration. But, as Judge Bedeau noted in the proceeding in James Wesley's estate, a sale was unnecessary by reason of the offer of appellant through his attorneys to pay such expenses. Certainly the record herein shows no greater reason for the sale than did the record in the companion case. Nor does the "explanation" set forth by

the court in its findings support the conclusion that for the reasons stated it was "forced to confirm the sale."

We must assume that pursuant to Judge Bedeau's order the appellant paid the expenses in James Wesley's estate and also pursuant to that order had every reason to assume that if and when the expenses in Clyde Eldon's estate were determined, he would be given the opportunity to do likewise.

It has long been the rule that an averment by the representative of the estate to the necessity of a sale is not alone sufficient. (*Haynes* v. *Meeks,* 20 Cal. 288.) It is not a matter for him alone to determine but is a conclusion which the court must draw from the facts. (*Pryor* v. *Downey,* 50 Cal. 388 [19 Am.Rep. 656].) Furthermore, unless the representative can bring himself within the mandatory provisions of the applicable section, the duty so cast upon him has not been sustained. Thus where the petition alleged that a sale was necessary in order to liquidate an estate for distribution, the court held that it was not a ground for sale under section 754, and that although the probate court found that it was to the advantage of the estate to sell the property, the reviewing court held that such finding was not supported by the evidence when the only reason shown was to distribute the estate in cash. (*Estate of Canfield,* 107 Cal.App.2d 682 [238 P.2d 67].)

Hence it would appear that where, as here, the record shows that a cashier's check was tendered by appellant's counsel and refused by counsel for the administratrix, which check was in substantially the amount of the ordinary expenses of probate, except the extraordinary fees requested by the administratrix and her attorney, the quoted findings of the court herein are likewise without support in the evidence.

While it is the rule that an order confirming the sale of real property should be affirmed on appeal if there is any substantial evidence to support it (*Estate of Da Roza,* 82 Cal. App.2d 550 [186 P.2d 725]), and that the determination of the sufficiency thereof lies in the sound discretion of the probate court (*Estate of Kay,* 30 Cal.2d 215 [181 P.2d 1]), nevertheless, where, as in the present case, the only possible reason for the sale is to pay the expenses of administration, and where that necessity has been removed by tender of a cashier's check by counsel and a bona fide offer to pay whatever additional expense the court may find, then any reason for the sale has been completely removed, and hence it was error to confirm the sale. (*Estate of Rawitzer,* 175 Cal. 585 [166 P. 581].)

The order is reversed, and the cause is remanded with instructions to the probate court to enter a new and different order in accordance with the views herein expressed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied April 9, 1958, and respondent's petition for a hearing by the Supreme Court was denied May 7, 1958.