ZINTER, Justice
(dissenting).
[¶ 43.] Glenn’s will, as well as the probate, was governed by the Uniform Probate Code, and the UPC provides a statutory power of sale that was unknown to our pre-existing statutes and the common law. Had Glenn wanted to limit, restrict, or eliminate that power of sale, the UPC requires that Glenn had to provide that limitation in his will. SDCL 29A-3-715(a) (Unif. Probate Code § 3-715 (amended 1997)), 8 U.L.A. 169. Although Glenn failed to do so, today the Court declares that a specific devise of real property is “inconsistent” and in “inherent conflict” with the statutory power of sale and a specific devisee’s right to receive property in kind. Supra ¶¶ 10, 20. From this, the Court holds as a matter of law that a specific devise creates an implied limitation, and therefore a personal representative has no authority to sell specifically devised property under the statutory power of sale in SDCL 29A-3-715(a)(23), even if it is in best interests of the estate. *567 According to the Court, the only exception is: when the power to sell is expressed in the will and the sale is necessary to pay debts of the estate or “where the heirs agree it is for their best interests as well as that of the estate.” Supra ¶ 28. To support this unprecedented result, the Court adopts the remarkable propositions of law that: (1) “no such power of sale exists as to real property specifically devised”; (2) a “general power authorizing the sale or rental of any property which the testator possessed at the time of death applies only to property not specifically devised”; and (3) “property specifically devised is not subject to [the] general power of sale granted to executors.” Supra ¶ 18.
[¶ 44.] This decision not only fails to follow the Legislature’s directives in the UPC, it adds new language by amending SDCL 29A-3-715(a)(23) to abrogate the statutory power of sale over specifically devised property unless the power is expressed in the will and the sale is necessary to pay estate debts or all of the heirs agree to the sale. The Court’s decision also fails to follow our controlling decision in In re Kappenmann’s Estate, 82 S.D. 91, 141 N.W.2d 780 (1966), and over 100 years of settled law establishing that there is no inherent inconsistency between a power of sale and a specific devise. Ultimately, the Court’s decision fails to recognize that a power of sale (either statutory or expressed) may be exercised with respect to specifically devised real and personal property for countless reasons other than to pay debts or where the heirs agree, as long as the sale benefits the estate. SDCL 29A-3-715(a)(23). The Court’s contrary pronouncements, based upon unsupported intermediate court dicta,[7] will profoundly impact practitioners as well as testators who devised real property in their wills. The decision will also affect practitioners and heirs who desire to conduct personal property sales.[8] For these reasons, I respectfully dissent.

*568
Factual Background

[¶ 45.] This case involves an estate that was informally probated. As the personal representative, Wayne determined that the buildings on the estate’s 132 acre homestead were in such extremely dilapidated condition that they constituted a drain on the estate. It is undisputed, but unacknowledged by the Court, that Wayne did not sell the entire 132 acres. Rather, he sold only the 6.17 acres on which the dilapidated buildings were situated.
[¶ 46.] The real and personal property were sold at separate public auctions. There is no allegation of impropriety in conducting the sales. Although James was not provided with formal notice of the public auctions under SDCL 29A-3-204 and 715(b),[9] he waived his right to require that the estate be formally administered. Moreover, Wayne was specifically authorized to exercise the power of sale (statutory or otherwise) “without notice, hearing, or order of court.” SDCL 29A-3-711. Finally, although James did file a demand for notice pertaining to the estate under SDCL 29A-3-204, that statute expressly provides that a failure to give notice does not void the sales. Rather, the remedy for failure to give notice under the statute is limited to damages. SDCL 29A-3-204.
[¶ 47.] In any event, James was provided notice of the filing of the summary of the public auctions and notice of the motion to confirm the sales. He appeared and objected to the confirmation of both sales. The circuit court confirmed the sales finding: (1) the land was a drain on the estate; (2) the sales were conducted in a reasonable manner; and (3) the land brought an exceptional price exceeding market value. Ultimately, the circuit court found, “[t]he evidence is abundant that the sale [of real property] was conducted for a good reason.” These findings are significant because they are unchallenged on appeal and SDCL 29A-3-715(a) authorizes such sales if the personal representative was acting “reasonably for the benefit of the estate.”

The Majority’s View of the Law

[¶48.] The majority does not dispute the circuit court’s findings that both sales *569 fell -within the “benefit of the estate” qualification for exercising the statutory power of sale under SDCL 29A-3-715(a)(23). Instead, the Court focuses on two points in its attempt to justify voiding the real property sale.[10] The Court first contends that three statutes vest specifically devised property in the specific devisee at the time of the testator’s death. See supra ¶¶ 14-15. Second, although the Court acknowledges that SDCL 29A-3-715(a)(23) grants the power of sale, the Court creates “an important exception.” See supra II17. According to the Court, even though there may be no language in a will expressly restricting the statutory power of sale, a specific devise of real property is so inherently inconsistent with a statutory power of sale that the specific devise impliedly trumps the power of sale as a matter of law. See supra ¶¶ 20, 26. Neither point is correct or supported by law.
[¶ 49.] With respect to vesting, the Court concludes, “the sale of specifically devised property [is] inconsistent with the specific devisees’ right to receive the property in kind.” Supra ¶ 10. The Court relies on SDCL 29A-2-606(a), SDCL 29A-3 — 906(a)(1), SDCL 29A-3-101,[11] and our *570 interpretive decision In re Estate of Roehr, 2001 SD 85, ¶ 8, 631 N.W.2d 600, 602-03 (stating the general rule that title to real property vests in a devisee on the death of a testator, subject to probate of the estate). The UPC and Roehr do not support the Court’s conclusion.
[¶ 50.] First, SDCL 29A-2-606 does not apply because that statute deals with the issue of ademption. See Unif. Probate Code § 2-606, 8 U.L.A. 427. Because all of Glenn’s specifically devised property was still in existence at the time of death, construction of Glenn’s will for purposes of ademption is not at issue, and the Court’s reliance on the ademption statute is misplaced. Although the Court concludes that “the title of chapter 29-2” suggests otherwise, see supra n. 3, it is well established that such titles in codified statutes may not be used to determine a statute’s meaning. Argus Leader v. Hagen, 2007 SD 96, ¶ 27, 739 N.W.2d 475, 483 n. 5. “[Tjitles whether designating entire titles, parts, chapters, sections, or subdivisions, constitute no part of any statute.” SDCL 2-14-9.
[¶ 51.] Second, although SDCL 29A-3-101 does provide that real and personal property generally devolves to specific de-visees, it also recognizes that the specific devisees’ rights are conditional: the property devolves to specific devisees “subject to ... administration.” Id. And, because “[t]he title of the heir or devisee ... is ‘subject to administration’; ... it remains encumbered so long as the estate is in administration or is subject to further administration.” 1 Richard V. Wellman, Uniform Probate Code Practice Manual, 318 (2d ed. 1977). “Thus, ‘title’ and ‘power to possess and control’ are to be distinguished.” Feickert v. Frounfelter, 468 N.W.2d 131, 132 (N.D.1991) (quoting Well-man, supra, at 316). For the same reason, it is generally recognized that because the property remains encumbered and subject to administration, the power of sale controls over a specific devise. As the North Dakota Supreme Court concluded, UPC § 3-101 (SDCL 29A-3-101) does not limit the power of sale given to administrators in UPC § 3-715 (SDCL 29A-3-715). Green, supra, 482 N.W.2d at 846 n. 3. On the contrary, “ ‘the right to possession and control’ of the decedent’s estate is vested in the P[ersonal] Representative] by Section 3-709.”[12] Feickert, 468 N.W.2d at 132.
[¶ 52.] Finally, rather than supporting the Court’s theory of vesting, SDCL 29A-3-906(a)(l) recognizes the personal representative’s superior power to possess and control specifically devised property. The statute provides that the “assets of a decedent’s estate shall be distributed in kind to the extent possible. ...” (Emphasis added.) The official comment to UPC § 3-906 explains that an in-kind distribution is only a preference. “This section establishes a preference for distribution in kind. *571 It directs a personal representative to make distribution in kind whenever feasible and to convert assets to cash only where there is a special reason for doing so.” Unif. Probate Code § 3-906, 8 U.L.A. 273 cmt. (1997).
[¶ 53.] Therefore, none of these statutes override the power of the personal representative to administer the estate, including exercising the statutory power to sell when there is a special reason; i.e., it is of benefit to the estate.[13] This conclusion is confirmed by Roehr, where this Court recognized that vesting is conditional and subject to the probate of the estate. 2001 SD 85, ¶ 6, 631 N.W.2d at 602. Consequently, today the Court is incorrect in suggesting that specifically devised real property vests in specific devisees such that it voids a sale of property sold under the power of sale granted in SDCL 29A-3-715(a)(23), even when it is reasonably necessary for the estate.
[¶ 54.] With respect to the consistency of a specific devise and a power of sale, the Court fails to acknowledge that we have long held that notwithstanding the conditional vesting in the specific devisee, it “does not make the power of sale repugnant to the specific devise.” Kappenmann, 82 S.D. at 97, 141 N.W.2d at 783. Instead of following precedent, the Court creates a new and “important exception” for specifically devised property. See supra ¶ 17. Even though this “specific devise exception” is not found in Glenn’s will or the UPC, the Court imposes one on SDCL 29A-3-715(a), reasoning that a specific devise “inherently conflicts with the statutory power of sale, for it is an indieation of the testator’s intent that the real property not be sold.” Supra ¶ 20.
[¶ 55.] The Court’s theories of inconsistency and resulting, implied exception are premised upon inapplicable cases. As previously indicated, those cases are cited for the propositions that: (1) “no such power [of sale] exists as to real property specifically devised”; (2) “a general power authorizing the sale or rental of any property which the testator possessed at the time of death applies only to property not specifically devised”; and (3) “real property specifically devised is not subject to general power of sale granted to executors.” See supra ¶ 18 (citing Brown v. Bailey, 2 Fiduc.Rep. 342, 84 Pa. D. & C. 269, 274, 1953 WL 4538, at *3 (1953); In re Estate of Radjenovich, 1991 WL 70304, at *1 (Minn.Ct.App.) (unpublished); In re De Forest’s Estate, 147 Misc. 82, 88, 263 N.Y.S. 135, 142 (N.Y.Sur.1933); Wilkinson v. Chambers, 181 Pa. 437, 442, 37 A. 569, 569 (Pa.1897); In re Estate of Gamble, 183 So.2d 849, 852 (Fla.App.1966); In re Chaney’s Estate, 120 Tex. 185, 36 S.W.2d 709, 711 (1931)). None of these cases support the extreme propositions adopted by this Court.
[¶ 56.] The Court’s first proposition that “no power of sale exists to real property that is specifically devised” comes from a 1952 Pennsylvania trial court case. That case is, however, unsupported by any Pennsylvania case law. It is also clearly distinguishable. In Bailey, the executor sought to eject a defendant who was in possession of real estate by a conveyance from the testator. In analyzing the Pennsylvania Fiduciaries Act of 1949, the court *572 expressly noted that factually, there was no reason to sell the property.
One of the purposes of the Fiduciaries Act of 1949 undoubtedly is to permit the personal representative to take possession and conserve real estate, not only for the benefit of the heirs or devisees but for the benefit of the estate if it should be necessary to convert it for the purposes of administration and distribution. Possession of this real estate by the executrix, however, could serve no useful purpose in the administration of the estate under the facts existing in this case.
Bailey, 2 Fiduc.Rep. 342, 84 Pa. D. & C. 269, 276, 1953 WL 4538, at *5 (1953). Therefore, Bailey only involved a factual dispute concerning what was in the benefit of the estate. More importantly, by recognizing the personal representative’s power in some factual cases, Bailey acknowledged the rule that when there is a “useful purpose,” specifically devised property may be sold. Id.
[¶ 57.] The Court’s second proposition that “a general power authorizing the sale ... of any property which the testator possessed at the time of death applies only to property not specifically devised” is not supported for a number of reasons. First, the Court’s cited authority, Radjenovich, is an unpublished Minnesota Court of Appeals decision. 1991 WL 70304, at *1 (Minn.Ct.App.1991) (unpublished). Under Minnesota law, “[unpublished opinions of the [Minnesota] Court of Appeals are not precedential.” Minn.Stat. § 480A.08. Second, that specific proposition was only used as a part of a factual determination that a codicil to a will controlled the property in question, and therefore the power of sale in the original will did not apply to the devise of any real property. Finally, this cited proposition was based upon the 1903 decision in In re Scott Will, 88 Minn. 386, 388, 93 N.W. 109, 110 (1903). Scott contains no language even arguably close to the proposition cited by this Court.
[¶ 58.] This Court finally cites Wilkinson v. Chambers, 181 Pa. 437, 37 A. 569 (Pa.1897), for the proposition that a will cannot be interpreted so as to allow the executor to defeat a specific devise. Wilkinson is a one paragraph Pennsylvania case in which the only issue was whether a devise of property was fee simple or a life estate. Id. at 442, 37 A. 569. Therefore, the language adopted by this Court is taken out of context and is dictum.
[¶ 59.] The Court’s remaining authorities are not discussed or explained.[14] Ul *573 timately, not one of the Court’s cases supports its propositions of inherent inconsistency such that a personal representative’s power of sale only relates to property not specifically devised. On the contrary, as is explained below, the law has been well settled both before and after the UPC that a power of sale and a specific devise are not inherently inconsistent or repugnant. The former may be exercised over the latter when a power of sale exists and it is in the best interests of the estate.

Kappenmann

[¶ 60.] This Court has already concluded in In re Kappenmann’s Estate that a power of sale is not repugnant to a specific devise. 82 S.D. 91, 97-98, 141 N.W.2d 780, 783 (1966) (citing 5 Bowe, William J. and Parker, Douglas H. Page on the Law of Wills, § 45.10).[15] Our citation to Page on the Law of Wills specifically explains, “[w]here an express power of sale is given, but the purpose for which it is to be used is not specified, it is held to be a power of sale in order to pay the proceeds to the devisees in lieu of the devise, and, therefore, such a power of sale is not repugnant to the devise of the property in fee.” Id. It should be further emphasized that the exact question in Kappenmann is the question before the Court today: whether “an executor may sell specifically devised real property, under a power of sale in a will [in our case, the analogous power in statute], where such sale is not necessary to pay debts and cost of administration, and where there is no directive in the will to sell such devised property.” 82 S.D. at 93, 141 N.W.2d at 781 (emphasis added). Kappenmann resolved this question holding the property could be sold because the vesting of the property was only conditional, and the specific devise did not defeat the general power of sale. Id. at 97-98, 141 N.W.2d at 783.
[¶ 61.] This Court attempts to distinguish Kappenmann and the cases hereinafter cited in this dissent noting that the will in Kappenmann contained a power of sale and Glenn’s will did not. Wayne, however, was granted an analogous power of sale by statute, and this Court offers no explanation how the statutory power to sell without notice is different than the power of sale considered in Kappenmann. A careful reading of Kappenmann establishes that the statutory power of sale is not materially different than the power granted by the will in Kappenmann. The statutory power and the power in the will are analogous because: (1) Kappenmann construed a will “where there [was] no directive in the will to sell such devised *574 property,” 82 S.D. at 93, 141 N.W.2d at 781 (emphasis added) (citations omitted); and (2) there is no material difference in the UPC power of sale statute and the pre-UPC power of sale statutes construed in Kappenmann. Compare SDCL 29A-3-715 and 29A-3-711 (granting exercise of statutory power of sale without notice, hearing or order of the court) with SDC 1960 Supp. §§ 35.1501 (SDCL 30-22-6) and 35.1527 (SDCL 30-22-1) (both repealed, 1995) (governing power of sale in a will and power of sale when not provided in the will). Because the wills and statutes construed in Kappenmann and this case are silent concerning the sale of specifically devised property, pre-UPC case law is apposite.[16] Moreover, the majority simply fails to acknowledge the only difference in the powers of sale is that before the UPC was adopted, personal representatives did not possess a power of sale unless it was included in the will. After the UPC, that power is granted unless the will provides otherwise. Compare SDCL 30-22-1 (repealed 1995) (authorizing power of sale when given in the will) with SDCL 29A-3-715(a)(23) (authorizing power of sale when not given in the will).
[¶ 62.] The Court, however, suggests that other courts recognize “a distinction between a testator granting the power of sale as opposed to a statute,” and in such cases “the specific devise must be distributed in kind.” Supra ¶ 23 (citing In re Estate of Polly, 511 So.2d at 756 and In re Estate of Gamble, 183 So.2d 849). Neither case supports the Court’s view. Polly is inapplicable because: no statutory power was even considered; although the will in Polly contained a power of sale, it did not concern the property at issue; and Polly construed a Florida statute that, like our pre-UPC law, only allowed the exercise of a power of sale when it was provided by a will. Thus, the issues were not the same, Gamble is distinguishable, and it supports this dissent. See supra n. 14.
[¶ 63.] The Court further suggests that making a specific devise subject to a power of sale may threaten intended specific distributions. The Court goes so far as to propose a red herring that a personal representative “could sell a family heirloom [or land that had been in the family for generations] that was specifically devised ... as long as he or she was acting reasonably for the benefit of the estate.” Supra ¶ 26. This suggestion simply fails to give effect to the language of SDCL 29A-3-715. Although the Court pays lip service to the statute’s limiting language that a personal representative would have to prove such sales of family heirlooms or land were necessary for the estate, such a finding could not be made. Obviously, under the facts in the Court’s examples, it would be unnecessary to sell such property to administer the estate.
[¶ 64.] Testators often give powers of sale that affect specifically devised property without making specific reference to the property. A New York case exhaustively explained why such powers are given and why the benefit to the estate protection is sufficient, even when the devise is for a spouse and children.
Had the intention of the testator been to restrict the power of sale [as is permitted under SDCL 29A-3-715] to the necessities of the trust [for his wife and children], he would have undoubtedly so expressed himself, or would at least have given the power in connection with the trust, and not left it to a later and entirely disconnected provision of his will wherein he gave his personal repre *575 sentatives the power to sell and dispose of his real estate for the “best interests” of his “estate.”
Good reasons suggest themselves why the testator might well have wished to confer upon his personal representatives a general power of sale for the purpose of a distribution of his estate among the residuary legatees and devisees. On the death of testator’s wife the will gave, devised and bequeathed all of the trust estate unto the children of the testator then living and to the issue of any of them who might then be deceased in equal shares per stirpes and not per capita. In case any such taker should be an infant, the acquiring of the title of such would involve a complicated and expensive court proceeding, which the testator might well have wished to avoid. He might also have foreseen discord among the residuary owners and the necessity of resorting to an expensive action in partition with attendant delay in order to obtain a sale of the real property and a division of the proceeds among those entitled thereto. Indeed, it appears that between the date of the making of the contract of sale and the time therein fixed for the passing of title, one of the testator’s children did actually commence an action in the Supreme Court for a partition of the real property of which decedent died seized, including the contracted premises. Thus the possible fears of the testator that all would not be harmonious among those who would eventually succeed to his real property seem justified by succeeding events. By the power of sale in the will the testator provided a way for the disposal of his estate by his trusted representatives at a nominal expense and thereby sought to save long delay and considerable expense which might otherwise result. Such are the reasons which usually give birth to powers of sale in wills. Certain it is that the testator in no way confined the exercise of the power of sale to the execution of the trust, but on the contrary made the same in the most general way for the benefit of his whole estate.
Hutkoff v. Winmar Realty Co., 211 A.D. 726, 728-729, 208 N.Y.S. 25 (N.Y.App.Div.1925).
[¶ 65.] Missouri provides another reason why the power of sale may prevail. In Estate of Basler v. Delassus, 690 S.W.2d 791 (Mo.1985), the specific devisees objected to the sale of the property under a power of sale. The Missouri Supreme Court reversed a lower court’s holding that the real property in issue “passed from the testatrix to the four devisees and that the personal representative had no authority to convey it elsewhere!.]” Bas-ler, 690 S.W.2d at 798. In rejecting that proposition, the Missouri Supreme Court explained that joint devisees do not have a right to specific enjoyment since any one of them could demand partition. Id. Thus, good reasons exist why powers of sale may be exercised over specifically devised property. Such powers are given to avoid problems relating to discord among heirs, to ease the disposition of property when minors are involved, to thwart expense and complications of partition proceedings, to avoid delay, and to benefit the entire estate.

No “Inconsistency” or “Inherent Conflict” Exists

[¶ 66.] For the foregoing reasons, and notwithstanding this Court’s belief that confirming Glenn’s estate sale would “reverse” a “century old doctrine,” see supra ¶ 12, the opposite is true. For more than a century, the law has recognized no re-pugnancy between a devise in fee and a power of sale (even when the specific devise was intended for the surviving spouse and children).
[T]here can be no doubt of the validity of the power of sale. There is no repug- *576 nancy between a devise in fee and a subsequent power of sale given to the executor for the benefit of the devisees. This is a common incident of testamentary dispositions. The title to the lands vested in the widow and children of [decedent] under the devise, and was a fee, subject to the power of sale given to the executor. In case of a sale under the power the title of the devisees in the land would be divested and an interest in the proceeds substituted.
Mellen v. Mellen, 94 Sickels 210, 219-20, 34 N.E. 925, 928 (N.Y.1893) (emphasis added) (citing Crittenden v. Fairchild, 41 N.Y. 289 (1869)). The cases have consistently held that specific devisees take subject to a representative’s power of sale.
Undoubtedly, under the terms of the will of the testator, his real property, upon the termination of the trust for the benefit of his widow, vested in his children and the issue of any of them then deceased, per stirpes. But such vesting of title was subject to the exercise by plaintiffs of the power of sale contained in said will.
Hutkoff, 211 A.D. at 728-729, 208 N.Y.S. 25. See also Cusack v. Tweedy, 126 N.Y. 81, 26 N.E. 1033 (1891); Hetzell v. Easterly, 66 Barb. 443 (N.Y.1867); In re McLaughlin’s Estate, 193 Misc. 192, 82 N.Y.S.2d 784 (N.Y.Sur.1948); Weinstein v. Hunter, 276 A.D. 471, 476, 96 N.Y.S.2d 1 (N.Y.App.Div.1950).
[¶ 67.] Similarly, for almost 100 years, Kentucky has recognized that a power of sale is not inconsistent with a specific devise.
[A] power given by will to an executor to sell all or any portion of the residuary estate is not affected by the devise of such residuary share; for the devise is to be construed as subject to the power of sale. Nor is a power of sale in executors necessarily inconsistent with a specific devise in fee.
Stofer v. Stiltz, 179 Ky. 399, 200 S.W. 631, 632 (1918) (quoting 31 Cyclopedia of Law and Procedure 1049 (1909)). Stofer explained:
[When real property] is given in clear language sufficient to convey an absolute fee ... [and][t]he power given the executor to sell and convey is not in vague, general, or indefinite expressions ... [t]he only construction necessary is to reconcile, if possible, any inconsistency in the two positive and unambiguous sections; and this can be done upon authority by holding that ... the devi-sees took the [real property] in fee, subject to the power of sale given to the executor....
Id. See also Davis v. Scavone, 149 Me. 189, 192, 100 A.2d 425, 426-27 (1953) (concluding that devises are subject to power of sale).
[¶ 68.] Although Glenn’s will was governed by the UPC, the UPC did not change this doctrine. The UPC only makes the power of sale statutory. Therefore, under the UPC, testators are now required to draft their wills to explicitly limit, restrict, or eliminate this power of sale if that is their intent. SDCL 29A-3-715 (providing the power of sale “except as restricted or otherwise provided by the will[.]”). Glenn’s will did not “restrict” or “otherwise provide” that Wayne could not exercise the power of sale with respect to the real or personal property. Therefore, Wayne was authorized to sell specifically devised property as long as it was reasonably for the benefit of the estate. Without any evidentiary support (because there was no testimony of the testator’s intent in this case), this Court disregards SDCL 29A-3-715 by declaring that by a naked specific devise, Glenn “stated his testamentary intent to restrict [this] sale.” Supra ¶ 25. As was demonstrated above, no case supports the Court’s declaration.
*577 [¶ 69.] Although the Court also suggests that this family had a “historical and sentimental attachment to this land” and Glenn wrote his will “[w]anting to keep this farm in the family,” see supra, ¶¶ 2, 27, neither assertion is supported by the record. At the hearing regarding the confirmation of the sales, no testimony or evidence was offered even suggesting that Glenn wanted to keep the farm in the family. Nor was there any evidence of any “sentimental attachment” to the land. The evidence suggests the opposite. As previously indicated, Wayne sent a letter to all of the heirs prior to the auction in August of 2003, indicating his intent to sell the land and requesting any thoughts or input the heirs may have had regarding his intent to sell. At the hearing, it was unre-futed that only one of the seven heirs— James — even responded. Further, it was also unrefuted that five of the seven heirs approved of the sale.[17] This Court’s appellate finding of this family’s “sentimental attachment” is clearly unsupported.
[¶ 70.] In the case before the Court today, one of the devisees apparently did not agree that the dilapidated buildings were a drain on the estate and should be sold. The personal representative, exercising his statutory power of sale — which is materially identical to the common-law power of sale — presented that dispute to the circuit court. The circuit court found that it was in the best interest of the estate and therefore concluded that there was authority to sell under SDCL 29A-3-715. Absent a challenge to the circuit court’s factual best interest determination, all pre-and post-UPC decisions specifically examining similar powers of sale agree with the circuit court’s conclusion.
[¶ 71.] Although the caselaw, our own precedent, and the UPC require this con-elusion, this Court finally contends that the statutory power of sale is only exercisable when the heirs agree or “it [is] necessary to satisfy the debts of the estate.” Supra ¶ 28. In doing so, the Court overlooks our decision in Kappenmann and the broader language in SDCL 29A-3-715(a) that do not incorporate such restrictions. They only require that the sale reasonably benefit the estate. California courts, construing a similar provision, confirm this Court’s error.
[¶ 72.] California Probate Code § 754 is similar to SDCL 29A-3-715. Section 754 provides, “ ‘[W]hen it is for the advantage, benefit, and best interest of the estate and those interested therein that any property of the estate be sold, the executor or administrator may sell the same[.]’ ” Estate of Barthelmess, 198 Cal.App.3d 728, 734-35, 243 CaLRptr. 832 (1988) (opinion modified on denial of rehearing). In interpreting that statute, California courts have explained that the “necessity to sell the residence in order to pay debts ... simply is not a relevant consideration in determining the propriety of the sale in this case. The sale may be upheld on the basis of the finding it was in the best interest of the estate[.]” Id. at 735, 243 CaLRptr. 832. See also In re Da Roza’s Estate, 82 Cal.App.2d 550, 553, 186 P.2d 725, 727 (1947) (citing § 754 and concluding: “The administratrix was authorized to sell the lots ... for the ‘advantage benefit and best interests of said estate,’ regardless of whether there were funds in the estate sufficient with which to pay all debts and expenses of administration.”). These courts recognize, as we did in Kap-penmann, that a power of sale may be exercised over specifically devised property for reasons other than the payment of *578 debts and administration. And, there is certainly no language in SDCL 29A-3-715 (a)(23) or common law supporting today’s decision requiring unanimous consent to sell each piece of specifically devised real and personal property.
[¶ 73.] Until today, South Dakota followed the UPC and the caselaw underlying the UPC and powers of sale. The effect of today’s decision, however, is that even if advance notice of sale is given, there is no power to sell specifically devised real or personal property under SDCL 29A-3-715(a)(23) unless there are specific directions to do so in the will and the sale is necessary to pay estate debts or the heirs agree it is for their best interests as well as that of the estate. Otherwise, according to the Court, sales of specifically devised property are void.[18] This was not the law before the adoption of the UPC, and it is not the law under the UPC. I therefore dissent, only joining the Court’s opinion on Issue 3.
[¶ 74.] KONENKAMP, Justice, joins this dissent.

. The strength of the Court’s authorities is typified by its reliance on the New York trial court case of In re De Forest’s Estate, 147 Misc. 82, 88, 263 N.Y.S. 135, 142 (N.Y.Sur.1933). The Court does not acknowledge that it adopts trial court dictum that is contrary to all New York appellate cases on this subject. See infra ¶ 66.

. Both the real and personal property were specifically devised and subsequently sold by Wayne’s estate pursuant to SDCL 29A-3-715(a)(23). On appeal, James challenges the personal property sale for the same reasons that he challenges the real property sale. Although the Court voids the real property sale, it fails to explain, under its legal analysis of the power granted under the UPC, why the sale of the specifically devised personal property was also not void. If the real property sale was void because the personal representative had no authority to sell specifically devised real property under SDCL 29A-3-715(a)(23), the same result must follow for the specifically devised personal property: SDCL 29A-3-715(a)(23) unequivocally applies to both real and personal property. Consequently, if the Court’s legal analysis were correct, the sale of the specifically devised personal property (sold at auction) was also unauthorized and void.
Although the Court does not address this personal property issue, practitioners will not have that option. As a result of this decision, practitioners will be required to rethink whether future personal property sales may be conducted. Under today’s decision, even if advance notice of a personal property sale is given, no power to sell specifically devised personal properly will exist under the statutory power of sale unless there are specific directions in the will and the sale is necessary to pay estate debts or all heirs agree to the sale of each item of personal property.
Although James briefed this issue and contended both sales were void, the Court notes that at oral argument he conceded his remedy was damages against the personal representative for the personal property sale. See supra ¶ 34. James’s concession, however, does not prevent future disgruntled heirs from using today’s decision to seek to void personal property sales. Additionally, the Court’s fail *568 ure to explain how the same statute can apply differently to real and personal property will be of no comfort to future personal representatives who conduct similar, but properly noticed personal property sales thereby subjecting themselves to suits for damages. Today's decision certainly creates an impossible situation for practitioners who must advise personal representatives whether they may sell personal property under wills that, very typically like this one, have a residuary clause leaving the bulk of the personal property to named relatives.

. The Court suggests that a formal notice of sale is required to be given to all heirs in UPC power of sale cases, stating Wayne conducted the sale "without the notice to the heirs as required by SDCL 29A-3-715(b)....” Supra ¶ 3. However, that formal notice is only required when the fair market value of the property is not readily ascertainable, and then, the notice need only be given to those who have filed a demand for notice under SDCL 29A-3-204. See SDCL 29A-3-715(b).
Although Wayne did not provide James with that formal notice under SDCL 29A-3-204 and 715(b), we have not been advised that any other heir made such a demand pertaining to the estate. Moreover, Wayne’s counsel sent a letter to all heirs (and James' attorney) advising them of Wayne’s intent to liquidate some of the real and personal property and requesting input. Wayne's attorney sent this letter prior to the public sales. James did not object or respond to the request for input on the sales. Additionally, prior to the public auction, Wayne and James engaged in a telephone conversation regarding the sales. Thus, the circuit court specifically found that James was not credible in claiming that he was not informed of the possibility of the sales. James does not challenge this finding on appeal, and no other heir has appeared objecting to a lack of notice.

. Interestingly, the Court cites the UPC and Green v. Gustafson, 482 N.W.2d 842 (N.D.1992), to support its position. Specifically, this Court cites Green for the proposition that a personal representative's improper disposal of personal property of the estate does not void the sale: the remedy is limited to damages. Supra ¶ 34. The Court, however, fails to acknowledge that Green applied that rule to an unauthorized sale of real property. Therefore, if we were to follow Green, the sale of real property in this case, even if unauthorized, may not be void. James' remedy may be limited to an action against the personal representative. The North Dakota Supreme Court explained:
Section 30.1-18-15(6), N.D.C.C. [Unif. Probate Code § 3-715], specifically authorizes the personal representative to "[a]cquire or dispose of an asset, including land ..., for cash or on credit, at public or private sale”; and Section 30.1-18-15(23) provides that the personal representative may ''[s]ell, mortgage, or lease any real or personal property of the estate or any interest therein.”
Section 30.1-18-14, N.D.C.C. [Unif. Probate Code § 3-714], provides broad protections to parties dealing with the personal representative:
"A person who in good faith either assists a personal representative or deals with him for value is protected as if the personal representative properly exercised his power. The fact that a person knowingly deals with a personal representative does not alone require the person to inquire into the existence of a power or the propriety of its exercise....”
The intent of these provisions is to adequately protect persons dealing in good faith with a personal representative and to avoid the necessity of court orders in routine probate administrations. See 1 Well-man, Uniform Probate Code Practice Manual 319 (2d ed.1977). As further noted by Professor Wellman:
"Section 3-714 explicitly protects purchasers from the possibility that a sale which a PR may have made was unnecessary or at too low a price or even against the terms of a will. The purchaser is explicitly excused from examining the terms of the will, court records relating to the appointment, or other sources that might be relevant to the question of whether the sale is proper as between the fiduciary and those entitled to the inheritance.” 1 Wellman, Uniform Probate Code Practice Manual, supra, at 407.
Id. at 845 (emphasis added). Today's Court declines to consider the application of South Dakota’s version of these UPC provisions.

. SDCL 29A-2-606(a) in relevant part provides:
(a) A specific devisee has a right to the specifically devised property in the testator’s estate at death[.]
SDCL 29A-3-906(a)(l) in relevant part provides:
(a) Unless a contrary intention is indicated by the will, the distributable assets of a decedent’s estate shall be distributed in kind to the extent possible through application of the following provisions: (1) A spe *570 cific devisee is entitled to distribution, of the thing devised[.]
SDCL 29A-3-101 provides in part:
Upon the death of a person, that person's real and personal property devolves to the persons to whom it is devised by will ... subject to homestead allowance, exempt property and family allowance, rights of creditors, elective share of the surviving spouse, and administration.

. SDCL 29A-3-709 provides in part:
Except as otherwise provided by a decedent's will, every personal representative has a right to, and shall take possession or control of, the decedent’s property, except that any real property or tangible personal property may be left with or surrendered to the person presumptively entitled thereto unless or until, in the judgment of the personal representative, possession of the property by the personal representative will be necessary for purposes of administration.

. The majority believes that the sale of specifically devised property in this case “would essentially nullify the provisions of SDCL 29A-2-606(a) and 29A-3-906(a)(l).” Supra ¶ 17. The Court is mistaken because this is not a case involving ademption under SDCL 29A-2-606(a), and SDCL 29A-3-906(a)(l) specifically contemplates such sales when the trial court finds it is in the best interests of the estate. See supra ¶ 52.

. See supra ¶ 18 (citing In re De Forest's Estate, In re Estate of Gamble, and In re Chaney’s Estate).
De Forest's Estate does not support the legal proposition that specifically devised property is not subject to a power of sale. That 1933 trial court case merely concluded that factually, in making a specific devise, that testator "did not comprehend” that the devise included the property at issue. Therefore, the court did not even consider the relationship between a specific devise and a power of sale, let alone conclude that legally, a specific devise is inconsistent with a power of sale. 147 Mise, at 88, 263 N.Y.S. at 142. Such a conclusion would have been impossible because all New York authority on this issue concludes that the two are not inconsistent. See infra ¶¶ 64, 66.
In re Estate of Gamble, 183 So.2d 849 (Fl.Ct.App.1966), is clearly distinguishable. In Gamble, the issue was only whether a sale was also necessary to pay the cost of administration or to distribute the estate. The decision was dependent upon the distinction between a general and limited power of sale. Therefore, the court noted the limited nature of its inquiry:
The question with which we are confronted involves a determination of whether the power of sale granted [in] the executor in testator’s will is a general power over which the probate court has no control, or whether it is a limited power under which *573 the authority of the executor is restricted. ...
Id. at 852. Because Gamble ultimately determined that the power was limited, the court only concluded that the power could not be exercised arbitrarily or capriciously; i.e. that the executor had no power “to liquidate any or all property of the estate under circumstances which serve no purpose other than to require the inheritance of the [specific] legatees to be distributed to them in cash rather than kind.” Id. at 853. This holding is in complete harmony with SDCL 29A-3-715(a)(23), which similarly requires that the sale not be arbitrary; it must reasonably benefit the estate. Consequently, Gamble does not stand for the proposition that specifically devised property may not be sold. It stands for the proposition that specifically devised property — even that property subject to a limited power of sale — may be sold as long as there is a reason and it is approved by the court.
The Court finally refers to In re Chaney’s Estate, 120 Tex. 185, 36 S.W.2d 709 (1931), for the proposition that specifically devised property is not subject to a general power of sale. In Chaney, however, the power of sale was not even at issue.

. Kappenmann has been cited as post-UPC authority. See In re Estate of Roehr, 2001 SD 85, ¶ 7, 631 N.W.2d at 602.

. It is ironic that the Court purports to distinguish this dissent’s cases because they are mostly "pre-UPC and the wills in those cases expressly granted the personal representative a power of sale,” supra ¶21. All of the Court’s cases are pre-UPC.

. Aside from James Olson, the only other heir who did not approve of the sale was Gary Eugene Olson. At the hearing, however, Gary indicated that he was not interested in buying the property.

. Interestingly, the 6.17 acres at issue were conveyed to the buyer by the personal representative’s deed over two years ago. This Court unequivocally voids that sale, but remands to "allow the third-party purchaser the opportunity to intervene and protect his or her interest.” Supra ¶ 29. This Court owes the parties and the circuit court some explanation and guidance on how they may accomplish this task on remand in light of SDCL 29A-3-712 and 714, the latter providing:
A person who in good faith either assists a personal representative or deals with a personal representative for value is protected as if the personal representative was properly authorized to act. The fact that a person deals with a personal representative with knowledge of the representative capacity does not alone require the person to inquire into the existence of a power or the propriety of its exercise. Except for restrictions on powers of supervised personal representatives which are endorsed on letters as provided in § 29A-3-504, no provision in any will or order of court purporting to limit the power of a personal representative is effective except as to persons with actual knowledge thereof. A person is not bound to see to the proper application of estate assets paid or delivered to a personal representative. The protection here expressed extends to instances in which some procedural irregularity or jurisdictional defect occurred in proceedings leading to the issuance of letters, including a case in which an alleged decedent is found to be alive.